# Teague *v.* State.

## Assault with Intent to Murder.

[DECIDED FEB. 17, 1906, 40 So. REP. 312.]

1. *Criminal Law; Evidence; Res Gestae.*—Evidence that after the shooting several parties came to witness' store and got guns and ammunition and started after defendant, and that after the shooting witness got a gun, is not admissible for the defendant, as a part of the *res gestae* of the assault with intent to kill.

2. *Criminal Law; Evidence; Habits of Party Assaulted.*—Evidence of the habits of party assaulted in respect of his getting drunk when in town, was inadmissible, though proof of his condi-

tion as to soberness at the time of the difficulty would probably be admissible.

3. *Indictment and Information; Variance; Motion to Quash.*—The fact that there were two persons of the same name, one. being Junior and the other Senior, and the indictment charged an assault with intent to murder such person, without designating whether the Junior or the Senior, was not good grounds for a motion to quash the indictment, where the evidence showed the assault to have been on the Junior, the words Junior or Senior, being merely *descriptio personis*, and no part of the person's name.

4. *Same; Signature of Solicitor; Validity.*—An indictment in code form indorsed as "True Bill" and signed by the foreman, is valid, although not signed by any solicitor at all.

5 *Criminal Law; Appeal; Harmless Error.*—Where it is shown in the bill of exceptions that the court refused to allow the state to introduce any part of a showing for a State's witness, any error committed by the court touching such showing, is harmless to the defendant.

6. *Same; Instructions.*—Charges which single out evidence, or give undue prominence to the testimony of named witnesses, and charges which are argumentative are always properly refused.

7 *Same; Instructions.*—A charge which ignores freedom from fault in the defendant, or in a third person, in bringing on the difficulty, and a charge which requires an acquittal unless the jury believe the defendant intended to kill the person assaulted, are erroneous and properly refused.

APPEAL from Crenshaw Circuit Court.

Heard before the Hon. J. C. RICHARDSON.

The appellant was indicted at the March term 1905 of the Crenshaw circuit court for an assault with intent to murder W. T. Loard, convicted, and sentenced to five years in the penitentiary. After the proof was all in the defendant moved to quash the indictment because it was not signed or found by the solicitor of the second judicial circuit. This motion was overruled. The defendant then requested the court to give the following written charges. AA. the general charge. BB. The court charges the jury that if you believe the evidence you must find the defendant not guilty of an assault with intent to murder. CC. The court charges the jury that if the indictment charges the defendant with an as-

sault with intent to murder W. T. Loard and the evidence shows that the person assaulted was W. T. Loard, Jr., and further that there was another person in the same locality by the name of W. T. Loard, and that they are father and son, then you should find the defendant not guilty. H. The court charges the jury that if you believe that the showings for the witnesses Sam Cannon, Billy Barton, Dick Sims and George Toles as to what they would testify is a true and correct account of what occurred between the defendant and Bob Loard at the time of the difficulty, then it would be your duty to acquit the defendant of assault with intent to murder. Z. The court charges the jury that if there was a sudden provocation to excite sudden passion, then the presumption is that passion distubed the sway of reason and made him regardless of his act and if the jury believe this from the evidence they cannot find the defendant guilty of assault with intent to murder. Charge 19th S. I charge you gentlemen of the jury that you will consider the evidence of the violent bloodthirsty character of Bob Loard, together with the other evidence in the case, to illustrate or explain the actual or apparent danger of the defendant when he fired the shot and in determining whether the defendant had reason to believe that he was in real or apparent danger to life or limb, or of suffiering grievous bodily harm at the hands of the deceased. 103. The evidence of the good character of the defendant when considered together with all the other evidence in the case may generate a reasonable doubt of the guilt of the defendant when a reasonable doubt of his guilt did not other wise exist. 105. The court charges the jury that if they are not satisfied of the guilt of the defendant beyond a reasonable doubt of the offence of an assault you will acquit the defendant. 110. If you have a reasonable doubt from the evidence as to whether the defendant intended to take the life of W. T. Loard at the time he fired the shot he will acquit the defendant of any crime. 111. If, from the evidence you do not believe that the defendant intended to kill Loard but only fired to scare or stop Loard from advancing on to the defendant, then you will acquit the defendant of any crime. 114. The court charges the jury that if

from the evidence you believe W. T. Loard was in the act of or about to commit a felony and the defendant fired to prevent the commission of a felony or an assault with intent to murder by W. T. Loard upon Sam Caffey, then you will acquit the defendant of any crime.

BRICKEN & BRICKEN and TERRY RICHARDSON for appellant; insisted that the questions propounded to the witnesses seeking to elicit the testimony that witness and others procured guns and pistols after the difficulty ought to have been admitted for defendant.—1 Mayfield's Digest, p. 889 § 257 ;*Shepard's case,* 135 Ala. 11; *Boyd's case,* 98 Ala. 32. The court erred in overruling defendant's motion to exclude the evidence offered by the State; also in overruling defendant's motion to quash the indictment, also in refusing to give the defendant the affirmative charge. The indictment charged an assault with intent to kill W. T. Loard and the proof showed without conflict that the assault was committed upon W. T. Loard, Jr., there being two persons of the same name residing in the same community, the one Junior and the other Senior.—Am. & Eng. Ency. of Law (1 Ed.) Vol. 16, pp. 121-122 and notes; *Garrett's case,* 76 Ala. 18; *Wood's case,* 133 Ala. 165; *Crawford's case,* 112 Ala. 1; *Page's case,* 61 Ala. 16; *Graham's case,* 40 Ala. 659; *Dossey's case,* 112 Ala. 23. The court erred in allowing the solicitor to cross examine Dr. J. E. Kendrick as to the contents of a showing, which had been prepared by the defendant for this witness and which was not used because the witness appeared and was examined orally. The court erred in requiring the defendant's counsel to furnish said showing to the solicitor for the purpose of cross examination as to the contents.— *Brown' case,* 38 So. Rep. 268; *Thompson's case,* 99 Ala. 175. In view of the fact that the defendant had testified that all of the Loard's, father and two sons, were present and all of them had pistols, the court erred in refusing to permit the defendant to show by the witness Tisdale that he saw guns and pistols after the difficulty, as this was corroborative of defendant, and there was evidence tending to show that the defendant acted in self defense.—*Karr's case,* 100 Ala. 5; *Domingus case,* 94

Ala. 9.; *Dearman's case,* 71 Ala. 352. The indictment should have been quashed because the order of the court appointing a special solicitor shows that the regular solicitor was unable to discharge the duties of *the court* and not showing that the regular solicitor was unable to discharge the duties of *the office,* there existed no reason for the appointment of a special solicitor; and the indictment being signed by W. W. Pearson as special solicitor shows that he counselled the finding of the indictment thereby rendering it void.—Code 1896, § 5516; *Blevin's case,* 68 Ala. 94; *Joyner's case,* 78 Ala. 450. The court erred in refusing written charge CC.—Am. & Eng. Ency. of Law, (1 Ed) Vol. 16, pp. 121-122; *Garrett's case,* 76 Ala. 18; *Wood's case,* 133 Ala. 165. The court erred in refusing the written charges H and 19S; *Perry's case,* 78 Ala. 22; *Robert's case,* 68 Ala. 156; The court erred in refusing charge Z; *Smith's case,* 86 Ala. 28. The court erred in refusing charge 101.—Citations to charge CC supra.—The court erred in refusing charge 103. This charge is distinguished from the charge asked and refused in *Crawford's case,* 140 Ala. 99; *Eggleston's case,* 129 Ala. 80 and *Crawford's case,* 112 Ala. 1, in that it does not single out and give undue prominence to the evidence of good character.—*Goldsmith's case,* 105 Ala. 12; *Scott's case,* 105 Ala. 57; 1 Mayfield's Digest, p. 157.

MASSEY WILSON, Atty. Gen. for State; insisted that it was not permissible to show the habits of Loard as to his getting drunk when he came to town, though it might be shown what his condition was at the time of the difficulty.—*King v. State,* 90 Ala. 612. The evidence of the getting of guns and pistols by witnesses and others after the difficulty was no part of the res gestae.—*Pitt's v. State,* 140 Ala. 70. Motion to quash the indictment because it did not charge an assault upon W. T. Loard Jr., was properly overruled.—21 Am. & Eng. Ency. of Law, (2 ed.) 310, n. 4; 10 Am. Ency. of Law, (2 Ed) 103, n. 1. Under the statement contained in the record, the court committed no error in its action in reference to the showing for the witness Kendrick.—*Yates v. State,* 38 So. 760; *Ross v. State,* 139 Ala. 144; *Pitts v. State,* 140 Ala. 70. The motion to quash the indictment because not signed by the regular solicitor, but signed by a spe-

[Teague v. State.]

cial solicitor, was properly overruled for the following reason, 1st, It came too late.—*Dunn v. State,* 39 So. 147; 2nd, it is not essential to its validity that it be signed by the solicitor at all.—*Prince v. State,* 140 Ala. 158; 3rd, If the order entered by the Judge appointing a special solicitor was not at first correct, it was properly corrected during that term of the court.—*Ex parte, Jones,* 61 Ala. 399; 15 Ency. Pl. and Pr. 205. The charges set out in the record were properly refused.

HARALSON, J.—When Loard was being examined for the state, he was asked on cross-examination if his brother, W. T. Loard, had not been drinking that evening, and he replied that he had taken one and possibly two drinks. He was then asked, if his brother was not in the habit of getting drunk when he came to town, to which question an objection by the state was sustained. The evidence called for was irrelevant to the issue in the case, unless it was shown that he was drunk on the occasion of his difficulty with defendant, in which case, possibly, it might have been relevant.—*King v. State,* 90 Ala. 616, 8 So. 856.

The witness, Searcy, for the State, was asked, if, after the shooting was all over, several parties came to his store, and got shot guns and started after defendant, and on objection by the state, the question was not allowed. The evidence called for was not a part of the *res gestae,* and was irrelevant, as was the one to witness Rhodes, if after the difficulty, he had not gotten a gun."—*Pitts v. State,* 140 Ala. 70, 37 So. 101.

John Loard testified, in reply to questions propounded by defendant on cross-examination, that there were two W. T. Loards who lived near Luverne. The defendant then asked the witness: "Your father then, is W. T. Loard, Senior, and your brother, W. T. Loard," witness replied, "Yes sir, I suppose so. They are both named W. T. Loard. They both live near Luverne." There was no evidence that the party assaulted, W. T. Loard, used the title, Junior, after his name, nor that either the father or son so signed their names. The word Junior, or Jr., or words of similar import, are ordinarily mere matters of description, and no part of a person's legal

name. The evidence in this case shows without dispute, that it was the son who was assaulted. There is no pretense that the assault was on the father.—16 Am. & Eng. Ency. Law, (2nd ed.) 121; 21 Ib. (2nd ed.) 1037. There was, therefore, no error in overruling defendant's motion to quash the indictment on account of the alleged variance between the name W. T. Loard, used in the indictment, as the party assaulted, and the real party assaulted, whose name, as was attempted to be shown, was W. T. Loard, Junior.

There was no error, so far as brought to light, in what occurred on the trial as to the showing for the witness, Dr. J. E. Kendrick, as found on pp. 14 and 16 of the record. What the solicitor on the cross, examined Dr. Kendrick about, when he came in and was examined in chief by defendant, does not appear. If he asked improper questions, which the court allowed, this should have been made to appear. The bill of exceptions does state, that "The court did not allow the solicitor to introduce any part of the showing in evidence." It may, therefore, be said, that if there was any error in the proceedings, touching this showing, it is not made to appear by defendant, and it was harmless error, from aught appearing.

The defendant introduced and examined as a witness, Dick Tisdale, and asked him, "Did you see any guns or pistols after the difficulty, and who had them?" The court properly declined to allow the question to be answered. The possession of guns or pistols by any persons after the difficulty, was irrelevant to the main issue. The same thing may be said as to the question asked the witness, Veasey, whether, after the difficulty, several boys did not run up to his store and get guns out of his case.

The defendant, after the evidence in the case was all in, moved to quash the indictment for the reason, in substance, that the same "was not found by the solicitor of the second judicial circuit, or by any one legally appointed instead of the solicitor." The indictment is signed by "W. W. Pearson, special solicitor of the second judicial circuit." An order of court entered of record was introduced, which recited that "the regular solicitor was unable to discharge the duties of this court on account

of his sickness, and that W. W. Pearson, a member of the bar, possessed the qualifications required by law for a solicitor of the court, and it was ordered that said Pearson be and he was appointed as a solicitor for the spring term, 1905, upon his filing the oath of office, which is this day filed."

It was not essential to the validity of the indictment, that the regular solicitor, or that any other solicitor, should have prepared or signed it. "An indictment receives its legal efficacy from the finding and return of the grand jury; and the legal evidence of its validity, is the return, 'a true bill,' apparent upon some part of it, bearing the signature of the foreman."—*Joyner v. State,* 78 Ala. 451; *Holley v. State,* 75 Ala. 14. The indictment in this instance, in addition to being signed by the special solicitor, bore the indorsement: "Grand jury No. 21. A true bill, M. M. Perdue, Foreman of Grand Jury." There was no error in the refusal of the court to quash the indictment.—*Prince v. State,* 140 Ala. 158, 163, 37 South. 171.

The general charge was properly refused. Charge BB was also properly refused. There was evidence tending to show that defendant was guilty of an assault with intent to murder. From what has already been said, it will appear that charge CC was properly refused.

Charge marked H gave undue prominence to the evidence of the witnesses therein named. Charge 19th S is also argumentative.

Charge Z is an apparent attempt to follow charge 3 in the case of *Smith v. State,* 86 Ala. 28, 5 South. 478, but it fails to hypothesize that the defendant acted under sudden passion.

Charge 103 asserts that evidence of good character considered in connection with the other evidence may generate a reasonable doubt of guilt, when the law is, proof of good character considered with the other evidence may generate a reasonable doubt. There is a marked distinction between proof of good character and evidence of good character.

Charge 105 is imperfect and misleading in the use of the words, "if the offense of the assault." With those words, it is not clear what the charge means.

Charges 110 and 111 were erroneous instructions. Under the evidence, the jury might have indulged a reasonable doubt whether an assault with intent to murder was committed, but they may have found that the lesser offense of an assault had been committed.

Charge 114 is erroneous. It ignores in its second hypothesis any consideration of fault of Caffee in bringing on the difficulty.—*Sherrell v. State,* 138 Ala. 3, 35 South. 120.

Affirmed.

DOWDELL, SIMPSON and DENSON, JJ., concurring.

*Assault with Intent to Murder.*

