405 So.2d 62 (1981)
Gary WASHINGTON and William Baldwin
v.
STATE of Alabama.
5 Div. 594.
Court of Criminal Appeals of Alabama.
October 6, 1981.
John R. Formby, Jr., Wetumpka, for appellant.
Charles A. Graddick, Atty. Gen., and J. Thomas Leverette, Asst. Atty. Gen., for appellee.
TYSON, Judge.
On May 5, 1981, Gary Washington and William Baldwin filed a joint "Petition for Writ of Habeas Corpus" to challenge the action of the Alabama Board of Corrections Disciplinary Court which eliminated two years of accrued "good time" from the records of both appellants due to an incident which occurred on February 16, 1981. The "Petition" (R. 2-17) was supported with a detailed summary of the appellants' contentions and an argument for the relief sought. The State filed a "Motion to Deny Petition for Writ of Habeas Corpus" (R. 39) based on the conclusory grounds that "all of the procedural due process requirements of a disciplinary hearing were met" and that *63 "the Petitioners were not twice put in jeopardy." For aught that appears in the record the State did not file any information in support of its "Motion". Nevertheless, the trial court, by its order of May 18, 1981, dismissed the appellants' "Petition" without a hearing.
From this order the appellants prosecute this appeal, contending that they are, at least, entitled to an evidentiary hearing to challenge the action of the "Disciplinary Court."
Before ruling on the issue involved here, a brief summary of the facts leading up to the appellants' Habeas Corpus Petition is warranted.
On February 16, 1981, the appellants, who were participants in the "Incentive Good Time" (IGT) program and who were assigned to the Montgomery Work Release Center, signed out at approximately 5:00 a. m. for their work release job in Montgomery. At 8:15 a. m. they were reported absent from their jobs. Consequently, escape charges were filed against them at 9:15 a. m. on this date.
Both of them reported back to the work release center shortly after 11:00 a. m. on this date, at which time the escape charges were dropped.
As a result of this incident disciplinary proceedings were initiated against the appellants. They were initially charged with the violation of Rule 18 of the Inmate Rules and Information Handbook for Community Based Residents on the grounds that they were "absent from an assigned work area." According to the appellants a complete "disciplinary hearing" was conducted on these charges at the conclusion of which the disciplinary board found appellants guilty and recommended a loss of eight months "good time" for each man.
Later that day this initial disciplinary action was nol prossed by W. C. Berry, the director of the Montgomery Work Release Center, and a second "disciplinary hearing" was conducted based on charges of escape in violation of Rule 1B of the Inmate Rules and Information Handbook. Pursuant to this second hearing, the appellants lost two years of "good time" credit. (According to W. C. Berry the first hearing was nol prossed before completion, thus allowing for the institution of the second action.)
Appellants complain in their Habeas Corpus Petition that they were twice tried for the same incident. They do not deny being absent from their assigned work areas for six hours on February 16, 1981, but do deny that said absence constituted an "escape" attempt. They point out that appellant Washington's IGT release date was September, 1981, and that appellant Baldwin's IGT release date was October, 1982. They argue that with release dates such a short time away they would not have attempted an escape.

I
The problem confronting this court on this appeal is that the record does not contain sufficient information for a thorough review of the trial court's denial of the appellants' Habeas Corpus Petition. Nearly all of the evidence we have of the disciplinary proceedings and the underlying incident comes from a detailed facts summary and an argument submitted by the appellants in support of their "Petition." The copies of the "Notice of Disciplinary Board Hearing" forms served on the appellants and the copies of certain memoranda regarding the disciplinary hearings (R. 24-37) are sketchy at best and provide little additional information.
The critical omission in the record before us is a "written statement reflecting the reasons and the conclusions" upon which the disciplinary board based its findings. There is an indication that such a statement existed because on the completed form summarizing one of the disciplinary hearings (R. 34) reference was made to an "attached synopsis." However, there is no "attached synopsis" in our record.
Furthermore, there was no answer or return from the State in connection with the appellants' Habeas Corpus Petition. Therefore, there was nothing to refute the facts as they were related by the appellants in said "Petition".
*64 For these reasons we are unable to determine whether or not the trial court's dismissal of the appellants' "Petition" was proper. Therefore, we must remand this case to the trial court. This decision is based upon the principles set out herein.
The correct method for challenging the decision of a state disciplinary board is by petitioning the appropriate circuit court for a "Writ of Habeas Corpus." Williams v. Davis, 386 So.2d 415 (Ala.1980). To comport with "due process" the board's decision must not have been made arbitrarily or capriciously but should have been based upon "substantial evidence." Aikens v. Lash, 514 F.2d 55, 60 (7th Cir. 1975), vacated and remanded on other grounds, 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976), reinstated as modified, 547 F.2d 372 (7th Cir. 1976); Chavis v. Rowe, 643 F.2d 1281 (7th Cir. 1981). In order to determine whether or not the board's decision was indeed based upon "substantial evidence", the trial court (as well as other reviewing courts) should have a "written statement by the factfinders [the disciplinary board] as to the evidence relied on and reasons" for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Aikens v. Lash, supra. Moreover, in the words of the Supreme Court in Wolff v. McDonnell, supra:
"... a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others."
This requirement of a "written statement by the factfinders" was also approved in a recent Alabama case which dealt, specifically, with the deprivation of "good time". Williams v. Davis, supra. The board should file a return in circuit court and include this information in same.
The record before us does not contain the required statement by the disciplinary board. Since the record is, thus, insufficient to allow a proper determination of the merits of the appellants' "habeas corpus" claims, an evidentiary hearing by the trial court is warranted to develop those omitted facts. Burden v. State, 584 F.2d 100 (5th Cir. 1978); and cases therein cited.
Therefore, the trial court's judgment dismissing the appellants' "Petition" is hereby set aside and vacated and this cause is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
All the Judges concur, except BOOKOUT, J., who dissents with opinion.
BOOKOUT, Judge, dissenting:
I do not believe the trial judge erred in dismissing the instant petition for writ of habeas corpus without a hearing on May 18, 1981. On that date the trial judge had before him a petition which, on its face, would not support the issuance of the writ and the discharge of the petitioners whether or not a hearing was held. The petition states inter alia:
"Petitioner Gary Washington's IGT release date was September of 1981, before his disciplinary, and petitioner William Baldwin's IGT release date was October of 1982, before his disciplinary infraction...."
Likewise, the petition alleges on its face that Baldwin is presently serving a forty-year sentence for second degree murder imposed "on or about August 1, 1975," and that Washington is serving a fifteen-year sentence for forgery, burglary and grand larceny imposed "on or about December 19, 1977." Therefore, the petition shows on its face that neither of the appellants was unlawfully restrained of their freedom at the time the trial judge ruled on the petition.
I recognize what is said in Williams v. Davis, supra, relied upon by the majority. It is true that our supreme court in that case held that denial of a petitioner's "good time" credits could be reviewed by way of habeas corpus and that certain due process *65 requirements must be met in disciplinary proceedings. In that case the trial judge dismissed the petition for writ of habeas corpus on December 17, 1979, after the petitioner Williams's predisciplinary good time release date of August 19, 1979. However, co-petitioner Johnny Null had a prospective release date of June 11, 1980.
In Williams, supra, our supreme court, in affirming a part of the judgment which dismissed a § 1983 civil rights action, quoted from Preiser v. Rodriguez, 411 U.S. 475 at 487, 93 S.Ct. 1827 at 1835, 36 L.Ed.2d 439 (1973). In the Preiser case the United States Supreme Court stated that "recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases."
The above quotation is not cited by our supreme court as authority for issuance of the writ of habeas corpus, but is cited in that section of its opinion dealing with the § 1983 civil rights action. I am uncertain whether or not the panel of our supreme court which released the Williams opinion adopted the federal position as the new rule in Alabama for habeas corpus proceedings. If that is the court's unequivocal decision, it is not clear in Williams and would certainly be a 180° change of direction on this issue. The federal courts have used the writ of habeas corpus over the years for a number of purposes which most of the states have not recognized.
I do not believe Williams directly addresses the instant issue and, therefore, I would hope that this issue would be settled conclusively by our supreme court on certiorari in the instant case, if the State has not already waived that writ by failing to file a brief at this stage of the proceedings. It appears that Williams indirectly (as applied to co-petitioner Null's situation) does conflict with the long-established rule in this state that habeas corpus does not lie to challenge prospective detention. Magee v. State, 42 Ala.App. 71, 152 So.2d 443 (1963); Phillips v. State, 40 Ala.App. 698, 122 So.2d 551 (1960). To my knowledge it has always been the law in this state that a petition for writ of habeas corpus must show that the petitioner is presently restrained of his liberty illegally and is due immediate release on issuance of the writ. Ex parte Miller, 54 Ala.App. 590, 310 So.2d 890 (1975); Tunstill v. State, 41 Ala.App. 516, 138 So.2d 267 (1962).
Because the federal district courts use the writ of habeas corpus for a variety of purposes does not mean that this state must also accept such uses, even though the United States Supreme Court approves of such uses in the federal system. I do not understand Williams v. Davis, supra, as holding that Preiser, supra, applies to habeas corpus proceedings in a state court or that our supreme court has specifically adopted Preiser as the new law in this state. If our supreme court is going to require the circuit courts to review all prison disciplinary proceedings by way of habeas corpus, even though the petitioners are not due for release and are serving valid sentences when the petition is filed, that mandate should be spelled out more clearly than it is in Williams v. Davis, supra. I therefore respectfully dissent.